**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenberg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MITCHELL MULNIX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1402-CR-71 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick Murphy, Commissioner
Cause No. 49F07-1311-CM-73556

**August 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Mitchell Mulnix appeals his conviction for Class B misdemeanor disorderly conduct. Mulnix contends that the evidence is insufficient to support his conviction. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

On November 12, 2013, Mulnix, who had been drinking, came home and began arguing with his wife, Leah Davis. Leah told him to leave the house; however, he refused and went to lie down in a bedroom. From the bedroom, Mulnix began screaming at Leah, calling her a "b****." Tr. p. 20. Another resident living in the house, Johnny Combs, asked Mulnix to leave, but he refused. Johnny called the police.

When two Indianapolis Metropolitan Police Department Officers arrived at the house, they found an "extremely intoxicated" Mulnix, who had bloodshot eyes and slurred speech, and the officers observed "beer cans on the floor and around the bed." *Id.* at 28. The officers tried to convince Mulnix to leave the house. Mulnix calmed down for a time, and the officers thought they had resolved the situation. But when they stepped outside the house, Mulnix went "above and beyond" what he was doing earlier, screaming at Leah and calling her a "f****** b****." *Id.* at 29. Mulnix also began yelling for Johnny "to come back into the back bedroom for a confrontation." *Id.* at 30. When the officers asked Mulnix to try to find another place to stay for the night, he replied, "f*** you." *Id.*

Because Mulnix was "belligerent," "confrontational," and "so intoxicated," the officers did not believe that it was safe for Leah and Mulnix's children, who also lived in

the house, to be near their father. *Id.* Again, they asked Mulnix to make arrangements to sleep elsewhere that night. When he repeatedly refused, the officers asked him to stand up and put his hands behind his back. *Id.* at 31. Mulnix stood up and "kind of flexed his muscles," leading one officer to think "we were going to be in for a fight," but then complied and put his hands behind his back. *Id.* As Johnny described it, Mulnix "started to . . . kind of fight[] them and they ended up putting him on the floor and handcuffing him and taking him out." *Id.* at 20. Mulnix continued to yell and curse at his wife until he was transported to jail. *Id.* at 32.

The State charged Mulnix with Class A misdemeanor trespass and Class B misdemeanor disorderly conduct. After a bench trial, the trial court found Mulnix guilty of Class B misdemeanor disorderly conduct. Mulnix was sentenced to 180 days in the Marion County Jail, with 68 days suspended.

Mulnix now appeals.

## Discussion and Decision

When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* (quotation omitted). A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* A

judgment of guilt may be based upon an inference reasonably drawn from the evidence. *See Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

Mulnix contends that the evidence is insufficient to support his Class B misdemeanor disorderly conduct conviction. To convict Mulnix as charged in this case, the State was required to prove that he knowingly or intentionally engaged in fighting or tumultuous conduct. Ind. Code § 35-45-1-3(a)(1)[1]; *see also* Appellant's App. p. 14 (charging information). Tumultuous conduct is defined as conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property. Ind. Code § 35-45-1-1; *Bailey*, 907 N.E.2d at 1006.

In *Bailey*, our Supreme Court found sufficient evidence of tumultuous conduct where a high-school student threw down his drink and coat, angrily stepped toward a dean with his fists clenched at his sides, and yelled obscenities in the dean's face. The student only retreated when he saw a school police officer nearby. The Court found that the trier of fact could have reasonably inferred that serious bodily injury would have occurred if the officer had not arrived. The Court explained that tumultuous conduct may occur "when the aggressor appears well on his way to inflicting serious bodily injury but relents in the face of superior force or creative resistance." 907 N.E.2d at 1007. The Court concluded that the evidence was sufficient to establish tumultuous conduct for Bailey's disorderly conduct conviction.

We likewise find sufficient evidence to establish tumultuous conduct to sustain Mulnix's disorderly conduct conviction. Mulnix, who was extremely intoxicated, was

---

[1] This section was amended effective July 1, 2014, as part of the recent criminal-code revision. The revision did not alter the statutory language referenced above.

4

yelling obscenities at his wife and encouraging another resident, Johnny, to fight him. Mulnix refused to leave the house and cursed at police officers who asked him to do so several times. The officers were worried about the safety of Mulnix's children if Mulnix remained in the house. When officers instructed Mulnix to stand and put his hands behind his back, he "kind of flexed his muscles," leading one officer to think "we were going to be in for a fight," though he ultimately complied with their instructions. As Johnny described it, Mulnix "started to . . . kind of fight[] them and they ended up putting him on the floor and handcuffing him and taking him out." Mulnix continued to scream and curse while handcuffed; ultimately, the situation was only diffused when the officers transported him to jail. From this evidence, the trial court could have reasonably concluded that serious bodily injury or substantial property damage was likely to occur— but for the presence of the officers willing to use whatever force was necessary to keep the situation under control—and we will not second-guess the court's determination in this respect. The evidence is sufficient to sustain Mulnix's conviction for disorderly conduct.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

5